UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

SLADDEN GILBERT                                CIV. ACTION NO. 3:20-00336

VERSUS                                         JUDGE TERRY A. DOUGHTY

GREENWICH INSURANCE CO., ET AL.                MAG. JUDGE KAYLA D. MCCLUSKY

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to enforce settlement and assess non-payment penalty [doc. # 24] filed by Plaintiff Sladden Gilbert. The motion is opposed. For reasons detailed below, it is recommended that the motion be DENIED.

<u>Background</u>

On September 26, 2018, Sladden Gilbert was operating his 2002 GMC dually on North 3rd Street, Monroe, Louisiana, when he was struck by a 2006 Ford Taurus that was owned by Solenis L.L.C ("Solenis") and operated by its employee, Raymond Johnson. (Petition [doc. #1-2]). As a result of the collision, Gilbert suffered a myriad of injuries, including to his right knee. *Id*. On September 12, 2019, Gilbert filed a petition to recover his damages in the 4th Judicial District Court, for the Parish of Ouachita, State of Louisiana, against Defendants, Solenis, Johnson, and Solenis's liability carrier, Greenwich Insurance Company ("Greenwich"). *Id.*

On March 13, 2020, Defendants removed the matter to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal [doc. #1-1]). The court issued a scheduling order in due course, which set the case for trial on June 7, 2021. *See* July 14, 2020, Sched. Order [doc. # 13].

On May 4, 2021, shortly before the scheduled pretrial conference, Defendants filed a notice of settlement with the court wherein they represented that the parties had exchanged formal settlement documents and would follow-up with a motion to dismiss once the process was completed.  *See* Notice of Settlement [doc. # 22].  In light of the settlement, the court issued its standard, 60-day order of dismissal.  [doc. # 23].

Unfortunately, execution of the settlement did not proceed as expeditiously as envisioned by Plaintiff, and, on May 14, 2021, he filed the instant motion to enforce settlement and to assess non-payment penalty.  [doc. # 24].  Plaintiff asserted in his motion that the parties had reached a settlement agreement at a mediation conference held on March 31, 2021, wherein Plaintiff agreed to release all of his claims against all Defendants in exchange for the sum of $175,000.  (Agreement; M/Enforce Settlement, Exh. A [doc. # 24-2]).[1]  As characterized by the Plaintiff, the Agreement included a suspensive condition that required Defendants to approve the settlement amount.[2]  The "suspensive condition" was satisfied on April 1, 2021, when Defense counsel communicated to Plaintiff's counsel that she had received the requisite authorization.  (Apr. 1, 2021, email from K. Dicke to J. Bruscato; M/Enforce Settlement, Exh. B [doc. # 24-3]).[3]

Thereafter, on April 23, 2021, Plaintiff formally executed a Settlement Agreement, Receipt and General Release with Indemnity and Confidentiality.  (Settlement Agreement;

---

[1] The standard form portion of the Agreement included a blank line to specify that the "defendant (insurer) (company)" would provide the payment to the plaintiff.  *Id*.  However, the line remained blank.  *Id*.  In other words, no insurer was identified as the source of funds.  *Id*.  Nonetheless, Defense counsel signed the Agreement on behalf of all three Defendants.  *Id*.

[2] The Agreement specified that the settlement figure was a "recommended number," but final authorization was required from the defense before the Agreement became binding.  *See* Agreement.

[3] In her email, Ms. Dicke added that she still had to hear from Solenis as to whether it required a copy of the signed released before processing the check.  *Id*.

2

M/Enforce Settl. [doc. # 24-4]).  However, when by May 14, 2021, Plaintiff still had not received the agreed-upon settlement amount, he filed the instant motion.

Plaintiff argued that the suspensive condition contained in the Agreement was satisfied on April 1, 2021, and, therefore, by law, he was entitled to penalties for the defendant-insurer's failure to pay the settlement within 30 days thereafter.  Specifically, Plaintiff argued that he was entitled to a penalty under Louisiana Revised Statute § 22:1892 in the amount of "fifty percent damages on the amount found to be due from the insurer to the insured . . ." i.e., $87,500, in this instance, plus reasonable attorney's fees and costs.  Alternatively, in the event that the court determined that the penalty under § 22:1892 was inapplicable, then Plaintiff requested assessment of the $5,000 penalty available under Louisiana Revised Statute § 22:1973, plus reasonable attorney's fees and costs.

On June 7, 2021, Defendants filed their opposition to the motion wherein they urged the court to deny Plaintiff's motion because

> the request to enforce is moot, since the settlement funds have been paid, the release signed, and the matter dismissed, (2) Solenis was self-insured for purposes of this litigation and is not subject to the provisions of Revised Statutes 22:189 and 1973, and (3) Greenwich Insurance Company had no obligation to pay the settlement and therefore could not have violated Revised Statutes 22:1892 and 1973.

(Defs.' Opp. Memo., pg. 1 [doc. # 26]).

In support of their opposition, Defendants submitted a declaration from Patrick Scanlon, Solenis's Director of Finance & Assistant Treasurer, who averred that Solenis's insurance policy with Greenwich included a $250,000 deductible, which meant that Solenis was responsible for the any loss covered by the policy up to that amount, including the costs of defense.  (Decl. of Patrick Scanlon; Def. Opp. Brief, Exh. 1 [doc. # 26-1]).  Scanlon further stated that Solenis controlled the defense in the case and that only Solenis was involved in the settlement

3

discussions with Plaintiff.  *Id.*  In fact, the lone representative who attended the mediation was

from Solenis.  *Id.*  Moreover, Solenis was solely obligated to pay the settlement reached with

Plaintiff.  *Id.*  Solenis issued the settlement check that was provided to Plaintiff, and the insurer

did not pay Solenis anything related to the subject accident.  *Id.*  In sum, the $250,000 deductible

was not reached in this case.  *Id.*

      Scanlon further detailed Solenis's controls for issuing a settlement check and explained

that the settlement check was issued on May 14, 2021, and transmitted by first-class mail that

same day.  *Id.*  Solenis learned that Plaintiff's counsel received the settlement check by May 21,

2021.  *Id.*

      Defendants also submitted the declaration of their attorney, Karen Dicke, who confirmed

that, during the March 31, 2021 mediation, all of her communications were with her contact at

Solenis.  (Declaration of Karen Dicke; Defs. Opp. Brief, Exh. 2 [doc. # 26-2]).  Dicke never

reported to or sought authority from anyone at Greenwich regarding the mediation or settlement

authority.  *Id.*  Dicke added that, at all times during the mediation, it was communicated to

Plaintiff that Solenis was the party at the mediation from whom she had to obtain further

approval of the settlement.  *Id.*

      Dicke further noted that on May 4 and 11, Plaintiff's counsel inquired about the status of

the settlement check.  *Id.*  However, he did not raise an issue regarding the timeliness of the

check until 3:11 p.m. on May 14, 2021, when he emailed Ms. Dicke a copy of his motion to

enforce settlement that he intended to file 19 minutes later and asked whether she opposed it.  *Id.*

Plaintiff filed the instant motion at 3:33 p.m. -- three minutes behind his unilaterally imposed

deadline.  *See* doc. # 24 NEF.

On June 11, 2021, Plaintiff filed a reply brief whereby he emphasized that all parties to the suit had entered into a binding settlement agreement on March 31, 2021. (Pl. Reply Brief [doc. # 27]). He asserted that the settlement funds were not received until May 20, 2021 -- 50 days after the settlement agreement was executed. *Id*. Plaintiff maintained that Greenwich was obligated to perform under the terms of the settlement agreement. *Id*. He also argued that Greenwich was a joint and/or solidary obligor under the settlement agreement. *Id*. Plaintiff added that it was of "no relevance to this proceeding *which* of the parties funded the settlement – Greenwich is a party to the settlement, and was and is obligated to pay per the settlement agreement." *Id*. Furthermore, "[t]he matter of this particular insurance policy deductible is a matter between Greenwich and Solenis, not a matter between Solenis and Gilbert." *Id*. Plaintiff concluded that Greenwich had no good faith defense for failing to pay the settlement within 30 days, and thus, Plaintiff was entitled to penalties as provided by law.

On June 15, 2021, Defendants filed a sur-reply in which they contested precisely when the settlement contract came into effect. (Defs. Sur-Reply [doc. # 30]). Defendants argued that additional terms were added to the agreement via subsequent correspondence such that the settlement check did not become due until after Plaintiff executed the release on April 16, 2021. *Id*. Defendants further maintained that because Greenwich was not obligated to pay under the policy, it cannot be obligated to pay the settlement that Solenis paid. *Id*.

## Law

### I.    Jurisdiction

5

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). No federal statute "gives federal courts jurisdiction to hear a claim for breach of an agreement merely by virtue of the fact that part of the consideration for [the agreement] was dismissal of an earlier federal suit." *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 431 (5th Cir. 2002) (citations omitted). "Enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen*, 511 U.S. at 378. A Court may exercise its ancillary jurisdiction to enforce a settlement agreement if it explicitly retains jurisdiction over the agreement or incorporates the agreement in its dismissal order. *Id.* at 381–82. Otherwise, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

In this case, the undersigned finds an independent basis for subject matter jurisdiction: diversity jurisdiction, 28 U.S.C. § 1332. This case was removed to federal court on the basis of diversity jurisdiction. The signatories to the Agreement are the same parties as in the lawsuit and are completely diverse. Further, the amount in controversy exceeds $75,000. *See* discussion, *supra*. Thus, this court has jurisdiction to entertain the instant motion.

## II.    Choice of Law

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The Court applies the choice of law rules of the forum state—Louisiana—to determine which state's law governs. *PHI, Inc. v. Rolls-Royce Corp.*, Civ. Action No. 08-1406, 2010 WL 883794, at *5 (W.D. La. Mar. 9, 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under

Louisiana's choice of law rules, contracting parties may generally choose which state's law will govern disputes arising out of the contract. *Id.* (citing La. Civ. Code art. 3540).

Here, the Agreement does not specify which state's law governs. However, Louisiana's residual choice of law provision supports the application of Louisiana law. Louisiana Civil Code Article 3515 provides:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

The dispute in this case centers around a contract to be fulfilled in Louisiana. Plaintiff is a citizen of Louisiana, and Defendants are authorized to do business in Louisiana. There is no indication or argument that any other state's policies would be impaired if its laws did not apply.[4] Therefore, the court will apply Louisiana law.

## III.    Contract Interpretation Principles

To determine Louisiana law, the Court examines Louisiana's codes and statutes and looks to the final decisions of the Louisiana Supreme Court. *See Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269–70 (5th Cir. 2009). "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Jones v. Travelers Indem. Co.*, Civ.

---

[4] Both sides analyzed Plaintiff=s claims pursuant to Louisiana law. Therefore, they implicitly agree that the disputed issues are governed by the substantive law of Louisiana. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties= agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

Action No. 18-0946, 2018 WL 6684584, at *2 (W.D. La. Dec. 19, 2018). "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." LA. CIV. CODE ART. 3071. To be enforceable, the compromise "shall be made in writing or recited in open court." LA. CIV. CODE ART. 3072.

Like any contract, a compromise is "interpreted in accordance with the intent of the parties" and "governed by the same general rules of construction that are applicable to contracts." *Jones*, 2018 WL 6684584, at *2 (quoting *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1106 (La. 2005)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ART. 2046. "[T]he meaning and intent of the parties to a written compromise is generally determined from the four corners of the instrument." *Advance Prod. & Sys., Inc. v. CCI Piping Sys., L.L.C.*, Civ. Action No. 14-2456, 2018 WL 1542100, at *8 (W.D. La. Mar. 29, 2018). Although "extrinsic evidence may be considered when disputes arise as to the scope of the agreement," this exception is limited "to cases in which substantiating evidence is presented establishing . . . that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Id.* (citing *Brown v. Drillers, Inc.*, 630 So. 2d 741, 749 (La. 1994)).

## IV.    Insurer Penalty Provisions

Plaintiff contends that he is entitled to penalties and fees under Louisiana Revised Statutes §§ 22:1892 and/or 1973, which provide, in pertinent part, as follows:

> [a]ll insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

8

\*      \*      \*

[a]ll insurers issuing any type of contract . . . shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.

\*      \*      \*

[f]ailure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . .  within thirty days after receipt of satisfactory proofs of loss of that claim . . .  or failure to make such payment within thirty days after written agreement or settlement . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured . . . as well as reasonable attorney fees and costs.

LA. R.S. §§ 22:1892(A)(1), (2), and (B)(2)).

Further,

A.   An insurer . . . owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B.   Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

\*      \*      \*

(2)   Failing to pay a settlement within thirty days after an agreement is reduced to writing.

\*      \*      \*

C.   In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater . . .

LA. R.S. § 22:1973(A), (B)(2) and (C) (in pertinent part)).

9

"A party seeking statutory penalties under [§ 1892] is required to establish that: (1) The insurer received satisfactory proof of loss, (2) the insurer failed to pay the claim within thirty days, and (3) the insurer's failure to pay the claim was arbitrary and capricious." *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 787 F.3d 276, 285 (5th Cir. 2015) (citation omitted).

The foregoing statutes are penal in nature, and, thus, they must be strictly construed. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003) (citation omitted) (discussing pre-revision version of the penalty statutes, which were numbered as §§ 22:658 and 22:1220). Liability for penalties under § 1892 requires proof that the insurer was "arbitrary, capricious, or without probable cause," i.e., vexatious, unjustified, or not based on a good faith defense. *See Reed*, *supra* (citations omitted).[5] Conversely, liability under § 1972(B)(2) only requires the claimant to show that the failure of an insurer to timely pay the settlement was "knowingly committed," which can be inferred from the fact that the insurer retained Louisiana counsel and has a claims department that is tasked with ensuring compliance with Louisiana's laws. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 860 So.2d 1112, 1119 (La. 2003).

Proof of actual damages is not required to recover the alternative, statutorily authorized minimum penalty under § 1973. *Id.* However, proof of actual damages *is* required to recover statutory penalties under § 1892. *Anco Insulations, Inc., supra.*

A plaintiff may be awarded penalties under only one of the two provisions, §§ [1892 and 1973], whichever amount is greater. He may, however, seek attorneys' fees under § [1892]

---

[5] "A refusal to pay the full amount claimed will not be arbitrary and capricious when the dispute has a good faith basis." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 299 (5th Cir. 2009).

while seeking damages and penalties under § [1973]. *Dickerson, supra* (citations omitted); *see also Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London Subscribing to Certificate/Policy No. D1180d150152-59633*, ___ So.3d ___, No. 19-562 (La. App. 5th Cir. May 28, 2021) (citing *Calogero v. Safeway Ins. Co. of Louisiana*, 753 So.2d 170, 1741 (La. 2000)).

<u>**Analysis**</u>

At the outset, the court observes that the penalty statutes at issue impose penalties on insurers, not insureds. Accordingly, Plaintiff's claims for penalties under §§ 1892 and 1973 only may be assessed against Greenwich for its alleged transgressions.

Plaintiff contends that Greenwich had satisfactory proof of loss to trigger its payment obligation as of March 31, 2021, when the parties signed the settlement agreement. However, satisfactory proof of loss under § 1892 is equivalent to establishing a right to recover under the insurance contract. *Demma v. Auto. Club Inter-Ins. Exch.*, 15 So.3d 95, 103–04 (La. 2009). "The statute thus requires the insurer to pay only when it indisputably owes payment under the insurance contract and only the amount that it indisputably owes." *Id*. Insofar as the settlement agreement may have established satisfactory proof of loss in this case, it concomitantly established that Greenwich owed nothing under the insurance policy because the settlement amount, including the cost of defense, did not exceed the deductible. Greenwich cannot be liable for penalties for failure to pay a loss that it did not owe.

Plaintiff argues that the matter of the deductible is an issue exclusively between Greenwich and its insured, Solenis. However, Plaintiff sued Greenwich pursuant to the Louisiana Direct Action Statute, which plainly subjects a third-party's cause of action to "all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured . . ." La. R. S. § 22:1269(C). In other words,

11

Plaintiff's rights against Greenwich are no greater than the policy terms. *See Johnson v. Fid. Mut. Ins. Co.*, 118 F. Supp. 392, 394 (W.D. La. 1954) (Hunter, J.) (insurer cannot be subject to liability for penalties and fees where the direct action statute limited liability to the amount and terms of the policy). Here, the $175,000 settlement amount set forth in the settlement agreement confirmed that Greenwich was not liable under the policy.

Plaintiff further argues that Greenwich was a solidary obligor with Solenis. Again, however, the solidarity between the insured and the insurer towards the victim extends only to the policy limits and coverage because, beyond that, the insurer is not obligated to anyone. *Soileau v. Smith True Value & Rental*, 144 So.3d 771, 787 n.8 (La. 2013).

Insofar as Plaintiff grounds Greenwich's solidary liability upon the settlement agreement itself, the court observes that, by law, "[a] performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." LA. CIV. CODE ART. 1794. Here, performance has been rendered in full by Solenis. Indeed, all parties agree that Solenis issued a check for the full settlement amount. Moreover, there is nothing within the March 31, 2021, settlement agreement requiring payment by a certain date. While the terms of the Settlement Agreement, Receipt and General Release with Indemnity and Confidentiality specified that payment would be made upon receipt of the fully executed release, it did not specify a deadline for the payment to be made.

Here, Solenis issued a check for the settlement amount within 21 days after Plaintiff executed the release. The court cannot find that a 21-day delay is unreasonable. Accordingly, Solenis's full performance under the parties' settlement agreement(s) inured to the benefit of co-obligor, Greenwich, which relieved the insurer of any liability under the agreement.

12

In sum, the court finds that Greenwich is not subject to penalties and fees under § 1892 because there was no satisfactory proof of loss establishing coverage (i.e., liability for Greenwich) under the policy.  In any event, these circumstances provide Greenwich with a good faith basis for not ensuring payment of the settlement within 30 days.  These same considerations militate against the discretionary award of statutory penalties under § 1973.  *See Bennett v. Laperouse & Son, Ltd.*, 35 So.3d 364, 368–69 (La. App. 1st Cir. 2010) ( §1973(C) penalty award was entirely up to the discretion of the court, which the court does not abuse in declining to assess when there are no actual damages).

## Conclusion

Accordingly,

IT IS RECOMMENDED that Plaintiff's motion to enforce settlement and assess non-payment penalty [doc. # 24] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. The District Judge will consider timely objections before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

13

In Chambers, at Monroe, Louisiana, on this 29th day of June, 2021.

KAYLA DYE McCLUSKY
UNITED STATES MAGISTRATE JUDGE